# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**SAMUEL PREVAL,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-2475

[June 24, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dennis D. Bailey, Judge; L.T. Case No. 16-3899CF10A.

Carey Haughwout, Public Defender, and Timothy Wang, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant appeals his conviction and sentence for attempted murder, conspiracy to commit murder, and two counts of tampering. He makes seven arguments:

(1) The trial court erred in failing to conduct a *Faretta* hearing.

(2) The State committed fundamental error when it presented multiple acts of tampering with the victim.

(3) The court erred in allowing the State to introduce a redacted letter written by the defendant.

(4) The court erred in admitting collateral crime evidence of the defendant's 2014 charge of solicitation to murder the victim.

(5) The court erred in denying the defendant's motion for judgment of acquittal on count three's charge of tampering

with the victim's grandmother.

(6) The court erred in overruling defense counsel's improper burden-shifting objection to the State's closing argument and denying his motion for mistrial.

(7) The court erred in denying the defendant's request to play his jail calls during his sentencing hearing.

We find no merit in the issues raised and affirm.

The background of this case begins in 2010 when the defendant was charged with lewd battery and molestation of his former girlfriend's minor daughter ("2010 case"). While the 2010 case was pending, the defendant sent his then-girlfriend to convince the victim not to cooperate with the prosecution. She visited the victim's workplace to convince her to accept a paid, furnished apartment in exchange for not testifying against the defendant. The victim did not accept the offer.

The defendant then allegedly attempted to solicit an undercover officer to murder the victim to prevent her from testifying. The State charged the defendant with solicitation to commit murder and tampering with a witness in 2014.

While the defendant was incarcerated on the 2014 case, the 2010 case was consolidated with the 2014 case and set for trial. The defendant's same girlfriend again went to visit the victim to convince her not to cooperate. This time, the defendant's other girlfriend accompanied her.[1] They accused the victim of adding false charges to the 2010 case and tried to convince her to drop the case altogether. The victim again declined.

The defendant then enlisted the help of his prior jail mate to kidnap the victim to prevent her from going to a deposition. Eventually, a decision was made to kill the victim. The jail mate and the defendant's two girlfriends worked together while the defendant directed them through coded messages in his jail phone calls.

In 2015, the jail mate shot the victim, who was injured, but survived. A week later, the victim's grandmother received a FedEx letter from the defendant addressed to the victim's father, referencing the victim and her family. The letter stated the defendant and his family were being targeted

---

[1] The defendant had two girlfriends at the same time.

2

because he agreed to talk to federal authorities in a tax fraud prosecution. The letter urged the victim's family to either convince the State to drop the 2014 case or not testify so the defendant could bond out and prevent further violence.

The detective who investigated the 2014 charges reached out to the Miami Dade Police Department to inform them that he believed the defendant may be involved in the victim's shooting. Following an investigation of the shooting and the letter, the State charged the defendant with attempted murder, conspiracy to commit murder, and tampering with the victim and her grandmother ("2016 case").

Because an integral witness in the 2010 case was in federal custody, the parties were not prepared to go trial on the 2010/2014 cases. The State wanted to proceed with the 2016 case. At a hearing on the 2016 case, newly appointed defense counsel moved to withdraw due to the complexity of the cases and his current caseload. A discussion ensued among defense counsel, the defendant, and the trial court.

The defendant suggested his new attorney go forward on the 2016 case, and that he could represent himself on the 2010 and 2014 cases. He claimed two prior defense attorneys were unable to understand those cases. He suggested that he was in a better position to handle them with the assistance of an attorney to sit second chair.

After some discussion, the trial court denied defense counsel's motion to withdraw without prejudice and denied the defendant's request to represent himself. Months later, defense counsel again moved to withdraw based on "irreconcilable differences." The court granted the motion and appointed new counsel to represent the defendant.

On appeal, the defendant first argues the trial court erred in not conducting a *Faretta* hearing on his request to represent himself. We disagree. The defendant requested to represent himself on the 2010/2014 case, not the present 2016 case.

The defendant makes six other arguments. Three involve evidentiary rulings: (1) the admission of collateral bad acts evidence; (2) the admission of the redacted letter; and (3) the exclusion of jail calls during his sentencing hearing. The three remaining issues involve the trial court's denial of a motion for judgment of acquittal, its decision to overrule a defense objection to the State's closing argument and consequent denial of a motion for mistrial, and whether fundamental error occurred when the State introduced multiple incidents of tampering spanning the period

3

of time alleged in the information. We find no merit in any of these issues either because there was no error; or if error occurred, it was harmless. *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). This includes the issue addressed by the dissent.

We therefore affirm his conviction and sentence.

*Affirmed.*

CONNER, J., concurs.
WARNER, J., dissents with an opinion.

WARNER, J., dissenting with opinion.

While the majority's recitation of the facts presents a compelling case for tampering with the witness, I would reverse because I conclude that the redaction of the letter received by the grandmother changed the entire meaning of the letter and severely prejudiced the defendant's case against tampering, which infected all of the charges. The State sought, and the trial court redacted, portions of the letter in which the defendant alleged that he and his family were being targeted by other people with whom the defendant was involved in fraud crimes. The defendant was working with federal authorities against these other individuals. In the letter he asked that the victim drop the charges against him so that he could get out on bond and protect his family and the victim, who was also being targeted as a way to get at the defendant. Several of the redacted statements specifically informed the victim's family that the attacks against her were not related to the 2010 case. In other words, the letter, when read in full context, does not threaten the victim or her family. When taken out of context, the letter appears to be a clear threat.

Based upon the rule of completeness, section 90.108, Florida Statutes (2018), I would reverse. In *Metz v. State*, 59 So. 3d 1225, 1226-27 (Fla. 4th DCA 2011), we held that:

> [a] defendant's exculpatory out-of-court statement is admissible into evidence when a state witness has testified to incriminating statements contemporaneously made by the defendant and "the jury should hear the remaining portions at the same time so as to avoid the potential for creating misleading impressions by taking statements out of context."

(quoting *Mason v. State*, 719 So. 2d 304, 305 (Fla. 4th DCA 1998)). Here, the remaining portions of the letter tended to exculpate the defendant from

4

any suggestion that the letter constituted a threat and amounted to tampering. The redaction of the letter should not have been allowed in this case.

Because of this error, I would reverse as to all charges, as I cannot conclude that the State has shown beyond a reasonable doubt that the redacted letter did not taint the other tampering charges and even the attempted murder and conspiracy charges.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***